**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SUSAN SELTZER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Action No.:  1:22-cv-00330 (JMC)** |
| | * | |
| **FINANCIAL INDUSTRY** | * | **Honorable Judge Jia M. Cobb** |
| **REGULATORY AUTHORITY** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.'S MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION & SUMMARY OF ARGUMENTS.................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 2

    A.    Background regarding FINRA as a Self-Regulatory Organization ....................... 2

    B.    FINRA's Dispute Resolution Forum ............................................................ 3

    C.    The Underlying FINRA Arbitration Involving Plaintiff Seltzer........................... 5

    D.    Plaintiff Seltzer's Allegations in the Instant Complaint ...................................... 6

III.  STANDARD OF DECISION .............................................................................. 7

IV.   ARGUMENT.................................................................................................. 9

    A.    Plaintiff's Complaint must be dismissed because FINRA is entitled to
        arbitral immunity for its publication of the Arbitration Award ............................ 9

    B.    Plaintiff's Complaint fails to state a claim for defamation upon which relief
        can be granted .......................................................................................... 12

        1.    Plaintiff's claim must be dismissed because Plaintiff cannot establish
            the required elements to state a claim for defamation ............................. 13

        2.    Plaintiff's Complaint must be dismissed because neither the
            Exchange Act nor any other statute provide a private right of action
            against FINRA for alleged violations of its own rules ............................. 14

        3.    Plaintiff's Complaint must be dismissed because it is an
            impermissible collateral attack on the Arbitration Award........................ 16

    C.    Plaintiff's Complaint must also be dismissed because Plaintiff's defamation
        claim is barred by the statute of limitations ..................................................... 17

        1.    Plaintiff's defamation claim is stale pursuant to the single
            publication rule ................................................................................. 17

        2.    Plaintiff cannot avoid the statute of limitations by arguing that the
            Arbitration Award was "republished" less than one year before she
            filed her Complaint ........................................................................... 19

    D.    Plaintiff's Complaint fails to demonstrate diversity jurisdiction sufficient to
        support this Court's subject-matter jurisdiction................................................. 23

i

ii

E.      Plaintiff's Complaint should also be dismissed because Plaintiff's vague and confusing allegations fail to satisfy the pleading requirements of the Federal Rules of Civil Procedure ........................................................................... 24

V.      CONCLUSION ...................................................................................................... 26

267779892v.5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akers v. Liberty Mut. Grp.*,
274 F.R.D. 346 (D.D.C. 2011).................................................................................9

*Am. Oversight v. Biden*,
Civ. No. 20-00716 (RJL), 2021 U.S. Dist. LEXIS 183397 (D.D.C. Sept. 24,
2021) ........................................................................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)...............................................................................................16

*Austern v. Chicago Bd. Options Exchange, Inc.*,
898 F.2d 882 (2d Cir. 1990).......................................................................10, 11, 12

*Austin Mun. Sec., Inc. v. NASD, Inc.*,
757 F.2d 676 (5th Cir. 1985) ................................................................................14

*Beranek v. Klassen*,
No. 73-2247, 1975 U.S. App. LEXIS 16797 (D.C. Cir. Mar. 4, 1975) .................24

*Bond v. United States DOJ*,
828 F. Supp. 2d 60 (D.D.C. 2011) ........................................................................18

*Butz v. Economou*,
438 U.S. 478 (1978).................................................................................................9

*Cahn v. Int'l Ladies' Garment Union*,
311 F.2d 113 (3d Cir. 1962)...................................................................................10

*Caldwell v. Argosy Univ.*,
797 F. Supp. 2d 25 (D.D.C. 2011) ..........................................................................7

*Cashmore v. FINRA*,
Civ. No. 18-1198S, 2020 U.S. Dist. LEXIS 209451 (W.D.N.Y. Nov. 9, 2020) ......4

*Cherdak v. Am. Arbitration Ass'n*,
443 F. Supp. 3d 134 (D.D.C. 2020) ...............................................................11, 12

*Churchill v. State*,
876 A.2d 311 (N.J. Super. Ct. App. Div. 2005)........................................18, 20, 21

267779892v.5

*Clariett v. Rice*,
Civ. No. 04-2250 (RJL), 2005 U.S. Dist. LEXIS 42884 (D.D.C. Oct. 18, 2005) ........................................................................................................................24

*Clark v. Viacom Int'l, Inc.*,
617 Fed. Appx. 495 (6th Cir. 2015) ................................................................................19

*Corey v. New York Stock Exch.*,
691 F.2d 1205 (6th Cir. 1982) .............................................................10, 11, 12, 17

*D.C. Pub. Emple. Rels. Bd. v. FOP/Metropolitan Police Dep't Labor Comm.*,
987 A.2d 1205 (D.C. 2010) ............................................................................................16

*In re Davis*,
347 B.R. 607 (W.D. Ky. 2006) ..........................................................................18, 20, 21

*Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
205 F.3d 906 (6th Cir. 2000) .........................................................................................16

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
191 F.3d 198 (2d Cir. 1999), *cert. denied,* 531 U.S. 1069 (2001)..................................2, 3, 15

*First Jersey Sec., Inc. v. Bergen*,
605 F.2d 690 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074 (1980)...........................................3

*Firth v. State*,
706 N.Y.2d 835 (N.Y. 2002) .........................................................................................18, 20

*Foster v. Turley*,
808 F.2d 38 (10th Cir. 1986) ..........................................................................................16

*Graham v. Today's Spirit*,
468 A.2d 454 (Pa. 1983) ..................................................................................................22

*Grigsby v. Thomas*,
506 F. Supp. 2d 26 (D.D.C. 2007) ...................................................................................24

*Habliston v. FINRA Regulation, Inc.*,
Civ. No. 15-2225 (ABJ), 2017 U.S. Dist. LEXIS 11691 (D.D.C. Jan. 27, 2017)
..............................................................................................................9, 10, 11, 12

*Hawkins v. Nat'l Ass'n of Sec. Dealers, Inc.*,
149 F.3d 330 (5th Cir. 1998)...........................................................................................10

*Hettinga v. United States*,
677 F.3d 471 (D.C. Cir. 2012) ........................................................................................25

iv

*Hewlett v. Lappin*, Civ. No. 10-2089 (UNA), 2010 U.S. Dist. LEXIS 130897
(D.D.C. Dec. 9, 2010) ...............................................................................................8, 24

*Int'l Med. Group v. Am. Arbitration Ass'n*,
312 F.3d 833 (7th Cir. 2002) .........................................................................................10

*Jankovic v. Int'l Crisis Group*,
494 F.3d 1080 (D.C. Cir. 2007).................................................................13, 14, 18, 23

*Jarrell v. Tisch*,
656 F. Supp. 237 (D.D.C. 1987) ...................................................................................24

*Kaempe v. Myers*,
367 F.3d 958 (D.C. Cir. 2004) .........................................................................................5

*Kiebala v. Boris*,
928 F.3d 680 (7th Cir. 2019) .........................................................................................19

*Kowal v. MCI Commc'n Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) .........................................................................................8

*Lamb v. Millennium Challenge Corp.*,
Civ. No. 19-589 (RDM), 2021 U.S. Dist. LEXIS 184800 (D.D.C. Sept. 27,
2021) ................................................................................................................................5

*Lokhova v. Halper*,
995 F.3d 134 (4th Cir. 2021) ...........................................................................19, 20, 23

*Loughlin v. United States*,
393 F.3d 155 (D.C. Cir. 2004) ..................................................................................8, 23

*Merrill Lynch, Pierce, Fenner & Smith v. Manning*,
136 S. Ct. 1562 (2016) ...................................................................................................10

*MM&S Financial, Inc. v. NASD*,
364 F.3d 908 (8th Cir. 2004) .........................................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983)............................................................................................................10

*Mullin v. Wash. Free Weekly, Inc.*,
785 A.2d 296 (D.C. 2011) .......................................................................................17, 18

*Naartex Consulting Corp. v. Watt*,
722 F.2d 779 (D.C. Cir. 1983)..................................................................................8, 23

*New England Cleaning Serv., Inc. v. Am. Arbitration Ass'n*,
199 F.3d 542 (1st Cir. 1999)..........................................................................................10

v

*Olson v. NASD*,
  85 F.3d 381 (8th Cir. 1996) ..................................................................................10, 11, 12

*PennMont Sec. v. Frucher*,
  586 F.3d 242 (3d Cir. 2009), *cert. denied*, 559 U.S. 972 (2010) ...............................................3

*Petro-Lubricant Testing Labs., Inc. v. Adelman*,
  233 N.J. 236 (N.J. 2018) ...........................................................................................20

*Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*,
  477 F.3d 1155 (10th Cir. 2007) .................................................................................10

*In re Philadelphia Newspapers, LLC*,
  690 F.3d 161 (3d Cir. 2002)..............................................................................20, 21, 22, 23

*Pisciotta v. Shearson*,
  629 A.2d 520 (D.C. 1993) ..........................................................................................17

*Prodanova v. H.C. Wainwright & Co., LLC*,
  Civ. No. 17-07926, 2018 U.S. Dist. LEXIS 225334 (C.D. Ca. Dec. 11, 2018) .......................4

*Rivera v. JPMorgan Chase Bank, N.A.*,
  140 F. Supp. 3d 88 (D.D.C. 2015) ...............................................................................8

*Rosen v. Am. Isr. Pub. Affairs Comm., Inc.*,
  41 A.3d 1250 (D.C. 2012) ....................................................................................13, 18

*Salyer v. Southern Poverty Law Center, Inc.*,
  701 F. Supp. 2d 912 (D. Ky. 2009)...............................................................................20

*Sanders v. Kerry*,
  180 F. Supp. 3d 35 (D.D.C. 2016) ...............................................................................8

*Satterlee v. Comm'r*,
  195 F. Supp. 3d 327 (D.D.C. 2016) ............................................................................9, 24

*Sears v. Magnolia Plumbing, Inc.*,
  778 F. Supp. 2d 80 (D.D.C. 2011) ...............................................................................4

*In re Series 7 Broker Quali. Exam*,
  548 F. 3d 110 (D.C. Cir. 2008)....................................................................................15

*Seth v. District of Columbia*,
  Civ. No. 18-1034 (BAH), 2019 U.S. Dist. LEXIS 77808 (D.D.C. May 8,
  2019) .............................................................................................................25

*Sparta Surgical v. NASD*,
  159 F.3d 1209 (9th Cir. 1998) ....................................................................................15

vi

*Sturdivant v. Seaboard Service System, Ltd.*,
　459 A.2d 1058 (D.C. 1983) ...................................................................................................9

*Tressler v. AMTRAK*,
　819 F. Supp. 2d 1 (D.D.C. 2011) ........................................................................................25

*Turbeville v. FINRA*,
　874 F.3d 1268 (11th Cir. 2017) ...........................................................................................15

*Wagshal v. Foster*,
　28 F.3d 1249 (D.C. Cir. 1994) ..............................................................................................9

*Weissman v. NASD*,
　468 F.3d 1306 (11th Cir. 2006) .............................................................................................9

*Wells Fargo Clearing Servs., LLC v. Polun*,
　Civ. No. 20-3787 (ELH), 2021 U.S. Dist. LEXIS 209379 (D. Md. Oct. 29,
　2021) .......................................................................................................................................4

*Wiggins v. District Cablevision*,
　853 F. Supp. 484 (D.D.C. 1994) .........................................................................................25

**Statutes**

9 U.S.C. § 9..................................................................................................................................16

9 U.S.C. § 10................................................................................................................................16

9 U.S.C. § 11................................................................................................................................16

15 U.S.C. § 78a .............................................................................................................................2

15 U.S.C. § 78o-3..........................................................................................................................2

15 U.S.C. § 78q.............................................................................................................................2

15 U.S.C. § 78s ...................................................................................................................2, 3, 14

15 U.S.C. § 78u...........................................................................................................................14

D.C. Code § 12-301(4).................................................................................................................17

D.C. Code § 16-4403(f) ...............................................................................................................16

**Rules**

Fed. R. Civ. P. 8........................................................................................................................8, 24

Fed. R. Civ. P. 8(a) ..............................................................................................................7, 8, 23

267779892v.5

Fed. R. Civ. P. 8(d) ..................................................................................................7, 25

Fed. R. Civ. P. 9(f) .......................................................................................................7

Fed. R. Civ. P. 10(b) .....................................................................................................8

Fed. R. Civ. P. 12(b)(1).............................................................................................8, 24

Fed. R. Civ. P. 12(b)(6).................................................................................................8

**FINRA Rules**

FINRA Rule 12000 .......................................................................................................4

FINRA Rule 12214 .......................................................................................................4

FINRA Rule 12300 .......................................................................................................4

FINRA Rule 12400 .......................................................................................................4

FINRA Rule 12403 .......................................................................................................4

FINRA Rule 12500 .......................................................................................................4

FINRA Rule 12900 .......................................................................................................4

FINRA Rule 12904 ...........................................................................5, 6, 7, 13, 14, 15, 16

FINRA Rule 13000 .......................................................................................................4

267779892v.5

Defendant Financial Industry Regulatory Authority, Inc. (hereinafter "FINRA"), by and through undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint, and further states:

## I.   INTRODUCTION & SUMMARY OF ARGUMENTS

Plaintiff's Complaint essentially attempts to re-litigate her 2018 arbitration against third parties under the guise of an untimely and legally deficient defamation claim against FINRA. In doing so, Plaintiff's Complaint misconstrues FINRA's role in her arbitration, airs her grievances against various parties that are not defendants in this case, and offers meandering allegations that do not support her claim for defamation against FINRA.

Despite the complexity of parsing the allegations contained in Plaintiff's Complaint, the critical facts are straightforward and demonstrate that the Complaint must be dismissed. In 2017, Plaintiff Seltzer initiated a private arbitration against a broker-dealer firm and several investment brokers in an arbitration forum administered by FINRA. The arbitration culminated in a decision against Plaintiff Seltzer, which was formalized in a written Arbitration Award issued by the three arbitrators selected by the parties to decide the arbitration. After the arbitrators issued their decision, FINRA made the final Arbitration Award publicly available as it was required to do pursuant to its Codes of Arbitration Procedure, which were approved by the Securities and Exchange Commission ("SEC") and which Plaintiff Seltzer agreed would govern the proceeding.

Plaintiff apparently believes the arbitrators incorrectly decided the arbitration and claims that she was defamed by the findings and conclusions documented within the arbitrators' Arbitration Award. Now, more than three years after the Arbitration Award was first made publicly available, Plaintiff filed her Complaint alleging a claim for defamation against FINRA. Plaintiff's claims fail for several independent reasons. First, Plaintiff's claim is barred by the doctrine of

1

arbitral immunity because FINRA's only connection to this case is that FINRA provided the arbitration forum in which Plaintiff Seltzer pursued claims against a broker-dealer firm and several investment brokers and which published a copy of the resulting award. Second, Plaintiff fails to state a claim for relief because (a) she cannot establish all of the necessary elements to state a claim for defamation, (b) the Exchange Act nor any other statute provides for a private right of action for FINRA's alleged violations of its own rules, and (c) this action is an impermissible collateral attack on the underlying Arbitration Award.  Third, Plaintiff's claim is barred by the District of Columbia's one-year statute of limitations because, under the single publication rule, the one-year statute of limitations began to run in 2018, when the Arbitration Award was first made publicly available. Fourth, Plaintiff's Complaint fails to allege sufficient facts to demonstrate diversity jurisdiction necessary to support this Court's subject-matter jurisdiction. And fifth, Plaintiff's Complaint fails to satisfy the basic pleading requirements of the Federal Rules of Civil Procedure, which require a "short and plain statement" showing that Plaintiff is entitled to relief. For these reasons, Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

## II.     FACTUAL BACKGROUND

### A.     Background regarding FINRA as a Self-Regulatory Organization

FINRA is a private, not-for-profit Delaware corporation and self-regulatory organization ("SRO") registered with the SEC as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. §§ 78o-3, *et seq.*, amending the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.* ("Exchange Act"). FINRA is the nation's only registered securities association as well as the nation's largest SRO. As an SRO, FINRA is part of the Exchange Act's comprehensive plan for regulating the securities markets. *See* 15 U.S.C. §§ 78q, 78s; *see also Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 201 (2d Cir. 1999), *cert. denied,* 531 U.S. 1069 (2001);

2

*PennMont Sec. v. Frucher*, 586 F.3d 242, 245 (3d Cir. 2009), *cert. denied*, 559 U.S. 972 (2010). The Exchange Act provides for extensive SEC oversight of SROs such as FINRA. *See* 15 U.S.C. § 78s; *see also Desiderio,* 191 F.3d at 201; *PennMont Sec.*, 586 F.3d at 246; *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 693 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074 (1980). The SEC must approve all FINRA rules before they are implemented, including FINRA's Codes of Arbitration Procedure. 15 U.S.C. § 78s(b). The SEC cannot approve a proposed FINRA rule or amendment unless it determines that the rule or amendment is consistent with the Exchange Act and the rules and regulations promulgated thereunder. *Id.*

### B.    FINRA's Dispute Resolution Forum

In addition to its role as a regulator of the securities industry, FINRA also operates the largest dispute resolution forum in the securities industry through FINRA Dispute Resolution Services (hereinafter "FINRA DRS").[1] Plaintiff Seltzer concedes that, "as an SRO established under the Exchange Act, FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award." Plaintiff's Complaint, ECF No. 1 at ¶ 10. Each year, thousands of arbitrations are filed in the FINRA arbitration forum.[2]

FINRA DRS administers arbitrations pursuant to FINRA's Codes of Arbitration Procedure to assist in the resolution of disputes between and among investors, securities firms, and individual registered representatives. FINRA's Codes of Arbitration Procedure are approved by the SEC. *See* 15 U.S.C. § 78s(b); *Desiderio*, 191 F.3d at 201. FINRA publishes its approved Codes of

---

[1]    *See    generally* FINRA    Dispute    Resolution    Services,    *available    at* https://www.finra.org/arbitration-mediation

[2] *See generally* Dispute Resolution Statistics, *available at* http://www.finra.org/arbitration-and-mediation/dispute-resolution-statistics.

3

Arbitration Procedure at https://www.finra.org/arbitration-mediation/code-arbitration-procedure.[3]

FINRA's Code of Arbitration Procedure for Customer Disputes ("FINRA Customer Code") is contained in the FINRA Rule 12000 series, and is relevant here because this case involves an arbitration that was initiated by a customer (Susan Seltzer) against her former investment brokers.[4]

In its role as an arbitration forum administrator, FINRA DRS appoints arbitrators, maintains the arbitration file, processes pleadings, motions, and discovery requests, drafts awards and other orders with arbitrator direction, and transmits documents between the arbitrators and parties. *See, e.g.*, FINRA Customer Code Rules 12300, *et seq.*, 12500, *et seq.*, 12900, *et seq.* The arbitrators who serve on FINRA arbitration panels for customer disputes are selected by the parties and appointed through a process outlined in the FINRA Customer Code. *See, e.g.,* FINRA Customer Code Rules 12400 and 12403. The arbitrators who are appointed to serve on FINRA arbitration panels are not FINRA employees; instead, they are volunteers who receive a stipend for their service. *Id.* at Rule 12214; *see also* FINRA Information for Arbitrators, *available at* https://www.finra.org/arbitration-mediation/become-finra-arbitrator ("FINRA arbitrators are independent contractors, not FINRA employees.").

---

[3] This Court may take judicial notice of facts in the public record, such as FINRA's Codes of Arbitration Procedure, FINRA rules, and information published on FINRA's website. *See Sears v. Magnolia Plumbing, Inc.*, 778 F. Supp. 2d 80, 84 (D.D.C. 2011) (citation omitted); *see also Prodanova v. H.C. Wainwright & Co., LLC*, Civ. No. 17-07926, 2018 U.S. Dist. LEXIS 225334, at *11 (C.D. Ca. Dec. 11, 2018) (noting that "courts routinely take judicial notice of materials submitted to, or promulgated by, FINRA"); *Wells Fargo Clearing Servs., LLC v. Polun*, Civ. No. 20-3787 (ELH), 2021 U.S. Dist. LEXIS 209379, at *4, n.3 (D. Md. Oct. 29, 2021) (taking judicial notice of information on FINRA's website); *Cashmore v. FINRA*, Civ. No. 18-1198S, 2020 U.S. Dist. LEXIS 209451, at *10-11 (W.D.N.Y. Nov. 9, 2020) (taking judicial notice of FINRA Rules).

[4] In addition to the FINRA Customer Code, FINRA also has a Code of Arbitration Procedure for Industry Disputes, which is contained in the FINRA Rule 13000 series and applies only to intra-industry disputes that are not relevant to this case.

267779892v.5

As Plaintiff Seltzer concedes, the FINRA Customer Code requires that "[a]ll awards *shall* be made publicly available." Exhibit 1 - FINRA Customer Code, Rule 12904(h), *also available at* https://www.finra.org/rules-guidance/rulebooks/finra-rules/12904 (emphasis added); *see also* ECF No. 1 at ¶ 64 ("The SEC approved FINRA Rule 12904(h); [*sic*] All awards shall be made publicly available"). FINRA complies with this requirement by making all arbitration awards available for search and review via FINRA's Arbitration Awards Online website ("Arbitration Awards Online").[5]

### C.    The Underlying FINRA Arbitration Involving Plaintiff Seltzer

On July 13, 2017, Plaintiff Seltzer filed a Statement of Claim to initiate an arbitration against a broker-dealer firm and her former investment brokers in FINRA's arbitration forum. *See* Exhibit 2 - FINRA Arbitration Award 17-01857, p.1.[6] In that Statement of Claim, Plaintiff Seltzer asserted various claims, including negligence, breach of contract, and breach of fiduciary duty. *Id.* at p. 2; ECF No. 1 at ¶¶ 8, 14. After extensive preliminary proceedings and voluminous filings, the three arbitrators selected by the parties held an evidentiary hearing from June 25, 2018, to June 28, 2018. Exhibit 2 at p. 14. Following the evidentiary hearing, the arbitrators issued a written award, which included a decision "in full and final resolution of the issues submitted for determination." *Id.* at p. 16.  The award was affirmed and executed by the three arbitrators who were selected by

---

[5] *See generally* FINRA Arbitration Awards Online, *available at* https://www.finra.org/arbitration-mediation/arbitration-awards.

[6] In deciding FINRA's motion to dismiss, the Court may consider the Arbitration Award at issue because it is extensively referenced in and an integral part of Plaintiff's Complaint, and her claim for defamation "necessarily relies" on the Arbitration Award. *See, e.g.*, *Am. Oversight v. Biden*, Civ. No. 20-00716 (RJL), 2021 U.S. Dist. LEXIS 183397, at *4, n.3 (D.D.C. Sept. 24, 2021) (citations omitted); *Lamb v. Millennium Challenge Corp.*, Civ. No. 19-589 (RDM), 2021 U.S. Dist. LEXIS 184800, at *14 (D.D.C. Sept. 27, 2021); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (finding that documents appended to motion to dismiss can be considered because the documents were referred to in the complaint and were integral to plaintiff's claims).

the parties to serve on the arbitration panel.  *Id.* at p. 19. The executed Arbitration Award was served upon the parties on September 5, 2018. *Id.* The Arbitration Award set forth a summary of the issues in controversy, the alleged damages, the relief awarded, and the rationale underlying the award. *See* Ex. 1, Rule 12904(e)-(f). On September 6, 2018, FINRA made the Arbitration Award publicly available online as required by the FINRA Customer Code. Ex. 1, Rule 12904(h).[7]

### D.    Plaintiff Seltzer's Allegations in the Instant Complaint

Plaintiff's Complaint ostensibly asserts a claim for defamation against FINRA because it published the Arbitration Award, which details the findings and conclusions of the arbitrators who decided the arbitration. Plaintiff admits "FINRA provided the forum for FINRA arbitration 17-01857." ECF No. 1 at ¶ 14. Plaintiff's Complaint contains numerous generalized assertions that defamatory statements were made without specifically identifying the content of the statements, the date the statements were first published, or who made the statements. *Id.* at ¶¶ 4-6, 15. Plaintiff appears to be claiming that various findings and conclusions contained in the Arbitration Award itself are defamatory. *Id.* at ¶¶ 18-19; 25-26 (referring to the "defamation in the Award"). For example, Plaintiff alleges the following findings of the arbitrators, as published in the Arbitration Award, are defamatory:

- "Claimants abused the arbitration process by making unsubstantiated allegations and ad hominem attacks against the Panel, Respondents, and Respondents' counsel whenever they were unhappy about a ruling or the content of a pleading, and engaging in inappropriate behavior at the hearing."

- "The viciousness of these attacks caused the former Panel Chair to resign."

- "Claimant was 'unhappy with a Panel Order.'"

---

[7]The subject Arbitration Award has been and remains available at https://www.finra.org/sites/default/files/aao_documents/17-01857.pdf

6

267779892v.5

*Id.* at ¶¶ 18-19, 26, 30; *see also* Ex. 2 at p. 15.

Plaintiff admits that FINRA Customer Code Rule 12904 requires that "all awards shall be made publicly available." ECF No. 1 at ¶ 64. Plaintiff, however, does not clearly allege when the Arbitration Award was first published in 2018, but concedes that she contacted FINRA "to remove" the alleged defamatory Arbitration Award from Arbitration Awards Online as early as November 6, 2018, more than three years before she filed her instant Complaint. *Id.* at ¶ 15. Plaintiff's Complaint also makes numerous confusing allegations regarding alleged technical changes to FINRA's website where the Arbitration Award is published. *See, e.g.,* ECF No. 1 at ¶¶ 15, 36, 39, 41-42, 66. Most importantly for the present motion, Plaintiff does not allege that any of the allegedly defamatory statements contained in the Arbitration Award were substantively altered at any point after the Arbitration Award was initially issued in 2018. Plaintiff also does not allege that FINRA published new defamatory statements at any point after the Arbitration Award was first published in 2018. Instead, Plaintiff merely alleges that technical changes were made to FINRA's website where the Arbitration Award has been publicly available since 2018.

## III.   STANDARD OF DECISION

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" The purpose of this Rule 8(a) "standard is to give fair notice to the defendants of the claims asserted that is sufficient to prepare a responsive answer and an adequate defense[.]" *Caldwell v. Argosy Univ.*, 797 F. Supp. 2d 25, 27 (D.D.C. 2011). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d). Allegations regarding the time and place of events are material when testing the sufficiency of a plaintiff's complaint. Fed. R. Civ. P. 9(f). Additionally, a plaintiff must state her claims in

267779892v.5

numbered paragraphs with each paragraph "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts should dismiss complaints that do not allege sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Rivera v. JPMorgan Chase Bank, N.A.*, 140 F. Supp. 3d 88, 90 (D.D.C. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When assessing the sufficiency of pleading allegations, the Court need not accept inferences that are "unsupported by the facts set out in the complaint" and need not "accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'n Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Ashcroft*, 556 U.S. at 678-79 (noting the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and  that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6)).

Federal Rule of Civil Procedure 12(b)(1) permits a motion to dismiss for lack of subject-matter jurisdiction. *Sanders v. Kerry*, 180 F. Supp. 3d 35, 40 (D.D.C. 2016). The party "seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action." *Loughlin v. United States*, 393 F.3d 155, 171 (D.C. Cir. 2004) (*citing Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983)); *see also* Fed. R. Civ. P. 8(a) (complaint must include a "short and plain statement of the grounds for the court's jurisdiction"). A plaintiff's failure to plead facts to demonstrate diversity jurisdiction "warrants dismissal of the action." *Hewlett v. Lappin*, Civ. No. 10-2089 (UNA), 2010 U.S. Dist. LEXIS 130897, at *1 (D.D.C. Dec. 9, 2010); *see also* Fed. R. Civ. P. 12(b)(1).

8

Although *pro se* litigants are held to a lesser standard, *pro se* litigants must still comply with the requirements of the Federal Rules of Civil Procedure. *Satterlee v. Comm'r*, 195 F. Supp. 3d 327, 334 (D.D.C. 2016). While a *pro se* plaintiff is "provided with some latitude in maneuvering through the trial process," she is still "obligated to prosecute her lawsuit in accordance with the Federal Rules of Civil Procedure and the local rules of this court." *Akers v. Liberty Mut. Grp.*, 274 F.R.D. 346, 349 (D.D.C. 2011) (noting *pro se* plaintiff was involved in numerous cases before the court and thus was "no stranger to litigation or the rules of this court") (citations omitted).

## IV.    ARGUMENT

### A.    Plaintiff's Complaint must be dismissed because FINRA is entitled to arbitral immunity for its publication of the Arbitration Award.[8]

The Supreme Court has held that the absolute immunity granted to judges is available to other individuals or organizations, such as FINRA and FINRA arbitrators, that are "functionally comparable" to a judge. *See Butz v. Economou*, 438 U.S. 478, 512 (1978). Judges, advocates, and witnesses are entitled to absolute immunity because of the "special nature of their responsibilities." *Id.* at 511-12. Judicial immunity is necessary so that those acting within the judicial sphere can function "without harassment or intimidation." *Id.*

"Courts have extended the doctrine of absolute immunity to a wide range of persons who play a role in the adjudicative process." *See Habliston v. FINRA Regulation, Inc.*, Civ. No. 15-2225 (ABJ), 2017 U.S. Dist. LEXIS 11691, at *12-15 (D.D.C. Jan. 27, 2017) (citing *Butz*, 438 U.S. at 512-13; *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994)); *see also Sturdivant v.*

---

[8] In her Complaint, Plaintiff Seltzer alleges that FINRA cannot assert absolute immunity because FINRA's publication of the Arbitration Award is 'non-governmental activity, private commercial conduct." ECF No. 1 at ¶¶ 34-35 & n. 11-13. Plaintiff's reliance on *Weissman v. NASD*, 468 F.3d 1306 (11th Cir. 2006) is inapposite because FINRA's position in the present case is that it is entitled to absolute *arbitral* immunity (not absolute *regulatory* immunity).

*Seaboard Service System, Ltd.*, 459 A.2d 1058, 1060 (D.C. 1983) (applying absolute privilege to participants in arbitration proceedings). As this Court has recognized, in addition to affording immunity to arbitrators and various parties directly involved in adjudicative processes, the doctrine of arbitral immunity extends to organizations that provide the arbitration forum, such as FINRA. *Habliston*, 2017 U.S. Dist. LEXIS at *13-14 ("The majority of circuit courts have extended arbitral immunity to cover not only the individual arbitrator, but the arbitration forum as well.") (*citing Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith,* 477 F.3d 1155, 1158-59 (10th Cir. 2007); *Int'l Med. Group v. Am. Arbitration Ass'n*, 312 F.3d 833, 844 (7th Cir. 2002); *New England Cleaning Serv., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542 (1st Cir. 1999); *Hawkins v. Nat'l Ass'n of Sec. Dealers, Inc.,* 149 F.3d 330 (5th Cir. 1998), *overruled in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith v. Manning,* 136 S. Ct. 1562 (2016); *Olson v. NASD,* 85 F.3d 381, 382 (8th Cir. 1996); *Austern v. Chicago Bd. Options Exchange, Inc.*, 898 F.2d 882, 886 (2d Cir. 1990); *Corey v. New York Stock Exch.,* 691 F.2d 1205, 1209 (6th Cir. 1982); *Cahn v. Int'l Ladies' Garment Union*, 311 F.2d 113 (3d Cir. 1962)).[9]

In conjunction with this overwhelming precedent, two recent decisions of this Court directly support the application of arbitral immunity to bar Plaintiff Seltzer's claim for defamation against FINRA. First, in *Habliston v. FINRA Regulation, Inc.*, plaintiffs filed suit against FINRA because the plaintiffs were "extremely dissatisfied" with their arbitration proceedings and alleged that the arbitration forum provided by FINRA was purportedly unfair. 2017 U.S. Dist. LEXIS at *1-2. FINRA filed a motion to dismiss asserting it was entitled to absolute immunity in its role as an arbitration forum. *Id.* at *13. This Court agreed with FINRA and dismissed plaintiffs' claims as

---

[9] The doctrine of arbitral immunity also supports the federal policy favoring arbitration as a method of dispute resolution. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

267779892v.5

"barred by the doctrine of arbitral immunity." *Id.* at \*13-16 (Berman Jackson, J.). In doing so, the court explained that "failing to extend immunity to the boards sponsoring the arbitrators would render the immunity 'illusionary' because it would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association." *Id.* at \*14-15 (quoting *Corey*, 691 F.2d at 1211, and *citing Olson*, 85 F.3d at 383). Of note, the *Habliston* plaintiffs argued that FINRA was not entitled to immunity because it allegedly had "unclean hands" and violated arbitration duties and rules. *Id.* at \*15. But the court held "plaintiffs' proposed exception would swallow the rule, and the case law supports applying arbitral immunity even in the face of similar claims." *Id.* at \*15-16 (citing *Olson*, 85 F.3d at 383; *Austern*, 898 F.2d at 886-87; *Corey*, 691 F.2d at 1208-09).

Second, in *Cherdak v. Am. Arbitration Ass'n*, 443 F. Supp. 3d 134 (D.D.C. 2020) (Kollar-Kotelly, J.), *pro se* plaintiffs brought claims against the American Arbitration Association ("AAA") for its alleged failure to comply with its own arbitration requirements and guarantees. This Court granted AAA's motion to dismiss based on numerous grounds, including arbitral immunity. As in *Habliston*, the court explained that "the extension of arbitral immunity to the arbitration forum is logical because, otherwise, immunity would be 'illusory' as plaintiffs would 'merely shift the liability [from the arbitrators] to the sponsoring association.'" *Id.* at 156 (quoting *Corey*, 691 F.2d at 1211). Thus, the court concluded "the purposes of arbitral immunity, as well as the bulk of case law" supports extending arbitral immunity to arbitration forums. *Id.* at 156. As in *Habliston*, the court rejected plaintiffs' argument that arbitral immunity should not apply to protect an arbitration forum from its own alleged "wrongdoing" because such an exception "would swallow the rule." *Id.* (citing *Habliston*, 2017 U.S. Dist. LEXIS at \*15-16).

Plaintiff Seltzer's claims must meet the same end as plaintiffs' claims in *Habliston* and *Cherdak*. Here, FINRA's role in the underlying arbitration proceeding was to provide an

11

267779892v.5

arbitration forum and to administer the arbitration pursuant to the FINRA Customer Code, which Plaintiff Seltzer agreed would govern the proceeding. FINRA's *only* connection to Plaintiff's claim for defamation is FINRA's publication of the Arbitration Award, which was required under the FINRA Customer Code. Plaintiff's claim for defamation against FINRA presents a textbook example of why arbitral immunity exists — to protect arbitrators, and arbitration forums, from undue influence and to protect "the decision-making process from attack by dissatisfied litigants." *Olson,* 85 F.3d at 382; *see also Corey*, 691 F.2d at 1211; *Austern*, 898 F.2d at 886-87. Similar to plaintiffs' attempts in *Habliston* and *Cherdak*, Plaintiff Seltzer attempts to avoid application of arbitral immunity by baselessly alleging that FINRA did not follow all of its arbitration rules. *See, e.g.,* ECF No. 1 at ¶¶ 30, 32-33, 40. Even accepting Plaintiff's vague and conclusory allegations as true, the doctrine of arbitral immunity applies to protect FINRA because an exception based on purported "unclean hands" or "wrongdoing" would negate the entire foundation of arbitral immunity and "would swallow the rule." *See Habliston*, 2017 U.S. Dist. LEXIS at *15-16; *Cherdak*, 443 F. Supp. 3d at 156. Accordingly, FINRA has absolute immunity with respect to these claims, and Plaintiff's Complaint must be dismissed with prejudice.

**B.** **Plaintiff's Complaint fails to state a claim for defamation upon which relief can be granted.**

Plaintiff fails to state a claim for relief for a number of reasons. First, Plaintiff Seltzer cannot establish all of the required elements of a defamation claim. Second, the Exchange Act nor any other statute provide for a private right of action against FINRA for alleged violations of its rules. Third, Plaintiff Seltzer's Complaint is an impermissible collateral attack on the Arbitration Award.

12

**1.    Plaintiff's claim must be dismissed because Plaintiff cannot establish the required elements to state a claim for defamation.**

To support a claim for defamation under District of Columbia law, a plaintiff must allege and prove four elements: (1) the defendant made a false and defamatory statement concerning the plaintiff, (2) the defendant published the statement without privilege to a third party, (3) the defendant's fault in publishing the statement amounted to at least negligence, and (4) either the statement was actionable as a matter of law irrespective of special harm or the publication caused the plaintiff special harm. *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (citations omitted); *Rosen v. Am. Isr. Pub. Affairs Comm., Inc.*, 41 A.3d 1250 (D.C. 2012). Plaintiff Seltzer cannot demonstrate that FINRA published the alleged defamatory statement without privilege to a third party because FINRA's publication of the Arbitration Award is protected by the doctrine of arbitral immunity, as discussed above. Independently, Plaintiff's claim fails because she cannot establish that publishing the alleged defamation amounted to at least negligence by FINRA because FINRA is required to make all arbitration awards issued pursuant to the FINRA Customer Code publicly available.

As detailed above, FINRA's only connection to Plaintiff's claim for defamation is that FINRA administered the arbitration forum that issued the allegedly defamatory Arbitration Award, and FINRA made the Arbitration Award publicly available by publishing a copy of the Arbitration Award on Arbitration Awards Online. The allegedly defamatory statements within the Arbitration Award are not statements made by FINRA. On the contrary, the statements at issue consist of the findings and conclusions of the arbitrators selected by the parties to hear their dispute. Ex. 2, pp. 14-19. The FINRA Customer Code identifies information that arbitrators must include in an arbitration award and information they may include in an arbitration award. *See* Ex. 1, Rule 12904(e)-(g). For example, arbitration awards must include a summary of the issues in

13

controversy, the alleged damages, and the relief awarded, and arbitration awards may include the rationale underlying the award. *See id.* In addition, as Plaintiff admits, FINRA DRS was required by the FINRA Customer Code, which was approved by the SEC, to make the Arbitration Award that was issued in the underlying arbitration proceeding publicly available. *See* ECF No. 1 at ¶ 64 ("The SEC approved FINRA Rule 12904(h); [*sic*] All awards shall be made publicly available."); *see also* Ex. 1, Rule 12904(h). Thus, Plaintiff cannot establish that FINRA made the allegedly defamatory statements, engaged in any wrongdoing by publishing the alleged defamatory statements, or establish that FINRA acted at least negligently. *See, e.g.*, *Jankovic*, 494 F.3d at 1088 (noting that defamation claim requires a showing that "the defendant's fault in publishing the statement amount to at least negligence"). In fact, if FINRA had failed to make the Arbitration Award publicly available, FINRA would have violated the FINRA Customer Code thereby subjecting itself to potential sanctions by the SEC.[10] Consequently, Plaintiff's Complaint must be dismissed because Plaintiff is unable to demonstrate the required elements necessary to allege a claim for defamation under District of Columbia law.

> **2.      Plaintiff's Complaint must be dismissed because neither the Exchange Act nor any other statute provide a private right of action against FINRA for alleged violations of its own rules.**

To the extent Plaintiff's Complaint can be read to allege that FINRA violated its rules by issuing the Arbitration Award that includes allegedly defamatory statements and making it

---

[10] FINRA is required to comply with the Exchange Act, the SEC's regulations, and its own rules. *See* 15 U.S.C. § 78s(g). The SEC has "broad supervisory responsibilities over [SROs]" and correspondingly broad power to enforce their compliance with these obligations. *Austin Mun. Sec., Inc. v. NASD, Inc.*, 757 F.2d 676, 680 (5th Cir. 1985). If FINRA violates the Exchange Act, federal regulations, or its own rules, the SEC may suspend or revoke FINRA's registration as an SRO, limit FINRA's activities or operations, or impose other sanctions. *See* 15 U.S.C. § 78s(c), (h)(1), (h)(4). The SEC is also authorized to initiate judicial proceedings against FINRA to enjoin activities that would violate the Exchange Act or FINRA's rules and to seek civil penalties. *See* 15 U.S.C. § 78u(d)(1), (d)(3)(A).

267779892v.5

publicly available, *see e.g.,* ECF No. 1 at ¶¶ 30, 32-33, 40, Plaintiff cannot state a claim upon which relief can be granted. Congress did not provide in the Exchange Act, nor in any other statute, for a private right of action against an SRO, like FINRA, for violating its own rules. Given the comprehensiveness of the Exchange Act, and Congress' silence regarding any private right of action, courts have consistently held that there is no implied private right of action against an SRO for acts or omissions under the Exchange Act. *See, e.g.*, *In re Series 7 Broker Quali. Exam*, 548 F. 3d 110, 114 (D.C. Cir. 2008) ("[C]ourts have consistently found Congress's intent under the Exchange Act precludes common law causes of action, and we agree with the reasoning of our sister circuits."); *see also Turbeville v. FINRA*, 874 F.3d 1268, 1276 (11th Cir. 2017) ("Congress did not intend to create a private right of action for plaintiffs seeking to sue [FINRA] for violations of [its] own internal rules."); *MM&S Financial, Inc. v. NASD*, 364 F.3d 908, 912 (8th Cir. 2004) ("Any attempt by [plaintiff] to bypass the Exchange Act by asserting a private breach of contract claim . . . is fruitless."); *Desiderio*, 191 F.3d at 208 ("[T]here is no private right of action available under the Securities Exchange Act to . . . challenge an exchange's failure to follow its own rules.") (citation omitted); *Sparta Surgical v. NASD*, 159 F.3d 1209, 1212 (9th Cir. 1998) ("It is undisputed, even by [the plaintiff], that a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the Act.").

Here, FINRA Rule 12904, which was approved by the SEC as consistent with the purpose of the Exchange Act, requires FINRA to make arbitration awards publicly available. *See* ECF No. 1 at ¶ 64 (Plaintiff admits that the FINRA Customer Code requires FINRA DRS to make the Arbitration Award publicly available). Plaintiff's Complaint includes allegations that "FINRA staff . . . violated . . . FINRA Rules," *id.* at ¶ 30, "FINRA staff permitted the additional defamatory

15

claim, in the Award," without providing factual support, *id.* at ¶ 32-33, and that "FINRA repeatedly refused to remove the defamation from the Award," *id.* at ¶ 43. Because the Exchange Act nor any other statute contemplates a private right of action against FINRA for alleged violations of its own rules, the Complaint must be dismissed for failure to state a claim.

3.    **Plaintiff's Complaint must be dismissed because it is an impermissible collateral attack on the Arbitration Award.**

An agreement to submit a dispute to arbitration is favored by both District of Columbia and federal public policy. *See D.C. Pub. Emple. Rels. Bd. v. FOP/Metropolitan Police Dep't Labor Comm.*, 987 A.2d 1205, 1208-09 (D.C. 2010); *see also AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). FINRA Rule 12904(b) provides that arbitration awards issued pursuant to the FINRA Customer Code are not reviewable "[u]nless the applicable law directs otherwise." The Federal Arbitration Act ("FAA"), "provides the exclusive remedy for challenging acts that taint an arbitration award" rendered by a FINRA arbitration panel by permitting parties to move to vacate, modify, or correct the award in court.[11] *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 205 F.3d 906, 908 (6th Cir. 2000) (finding tort and contract claims to be "impermissible collateral attack[s]" on an award entered in an NASD arbitration); *see also Foster v. Turley,* 808 F.2d 38, 41-42 (10th Cir. 1986).[12] Notwithstanding the concerns Plaintiff had with the Arbitration

---

[11] The District of Columbia Revised Uniform Arbitration Act ("UAA") specifically excludes FINRA arbitrations from its statutory reach. D.C. Code § 16-4403(f).

[12] *See also* 9 U.S.C. § 9 (requiring a court to confirm an award "unless [it] is vacated, modified, or corrected as prescribed in sections 10 and 11"); *id.* §§ 10(a), (b) (specifying the ground on which "the United States court in and for the district wherein the award was made" "may" vacate an award and, under certain circumstances, "direct a rehearing by the arbitrators"); *id.* § 11 (specifying the grounds for modifying or correcting an award).

267779892v.5

Award when it was issued and her knowledge of the available remedies under the FAA, ECF No. 1 at ¶ 15, Plaintiff Seltzer did not pursue those remedies.

Instead of timely pursuing her remedies under the FAA,[13] Plaintiff waited more than three years to assert an independent tort claim against FINRA in an effort to recover damages and to obtain an order "to remove all Defendant's defamatory statements" with which she disagrees. ECF No. 1 at p. 31 (Prayer for Relief). Accordingly, Plaintiff Seltzer's Complaint "mount[s] . . . an impermissible collateral attack on the award in a manner that, if permitted, would circumvent the exclusive statutory remedy by which such awards may be vacated [or modified]." *Pisciotta v. Shearson,* 629 A.2d 520, 521 (D.C. 1993) (finding that claims for damages rather than vacating an award are "an impermissible collateral attack on the arbitration award"); *see also Corey,* 691 F.2d at 1213 (allegations of misconduct in the arbitration process do not make out an independent claim for which a court may award damages). For this reason, the Complaint must be dismissed for failure to state a claim.

C. **Plaintiff's Complaint must also be dismissed because Plaintiff's defamation claim is barred by the statute of limitations.**

1. **Plaintiff's defamation claim is stale pursuant to the single publication rule.**

Under District of Columbia law, the statute of limitations for a claim of defamation is one year. D.C. Code § 12-301(4). The statute begins to run on the date the allegedly defamatory statement was first published, and the one-year period of limitation is strictly applied. *See, e.g.*, *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2011) (holding complaint filed one year and three days after publication of the defamatory statement to be time-barred). Under the

---

[13] Plaintiff was aware of the time limit during which she could challenge the Arbitration Award under the FAA.  *See* ECF No. 1 at ¶ 15 ("November 6, 2018, before the deadline to file a Motion to Vacate").

267779892v.5

District of Columbia's "single publication" rule, an allegedly defamatory statement has one publication date, which is the date the statement was "first generally available to the public." *Jankovic*, 494 F.3d at 1087; *see also Mullin*, 785 A.2d at 298 n.2. Republication of the same defamatory statement does not create a new cause of action. *Rosen*, 41 A.3d at 1255.

The single publication rule applies to allegedly defamatory statements made via the Internet. *Jankovic*, 494 F.3d at 1087 (citing *In re Davis*, 347 B.R. 607, 611-12 (W.D. Ky. 2006); *Churchill v. State*, 876 A.2d 311, 316-319 (N.J. Super. Ct. App. Div. 2005); *Firth v. State*, 706 N.Y.2d 835, 842-43 (N.Y. 2002)). The rule also applies to allegedly defamatory statements that were replicated by third parties on the Internet. *Jankovic*, 494 F.3d at 1087-88; *see also Bond v. United States DOJ*, 828 F. Supp. 2d 60, 78 (D.D.C. 2011) (referencing *Jankovic* and noting that the single publication rule applies "even if third parties replicate the allegedly libelous material on the Internet"). As the Court of Appeals for the District of Columbia Circuit has explained, the "single publication rule was designed as an accommodation to new forms of communication, and in applying the rule to the Internet, the court must be mindful of the rule's purpose, which according to the Restatement consists of 'avoiding multiplicity of suits, as well as harassment of defendants and possible hardship upon the plaintiff himself.'" *Jankovic*, 494 F.3d at 1087 (citing Restatement (Second) of Torts § 577A cmt. d).

In the present case, Plaintiff Seltzer's own allegations demonstrate that her claim for defamation is barred by the statute of limitations. Plaintiff filed her Complaint on February 2, 2022, more than three years after the Arbitration Award was issued and published. ECF No. 1. Plaintiff's Complaint makes numerous confusing, contradictory, and irrelevant allegations regarding dates that the Arbitration Award was available online. *See, e.g.,* ECF No. 1 at ¶¶ 15, 36, 39, 41-42, 66. However, it is undisputed that the hearing in the underlying arbitration occurred

18

from June 25, 2018, to June 28, 2018. Ex. 2, at p.14. The resulting Arbitration Award, which Plaintiff claims to be defamatory, was executed and served no later than September 5, 2018. *Id.* Plaintiff admits that she contacted FINRA "to remove" the allegedly defamatory Arbitration Award from Arbitration Awards Online as early as November 6, 2018. ECF No. 1 at ¶ 15. Plaintiff does not allege that the allegedly defamatory content included in the Arbitration Award has been altered at any time since the Arbitration Award was first published. Under the single publication rule, the allegedly defamatory statements were first published no later than November 6, 2018. Plaintiff did not file her instant Complaint until February 2, 2022, which is far outside the applicable one-year statute of limitations. Consequently, Plaintiff's Complaint must be dismissed with prejudice.

2. **Plaintiff cannot avoid the statute of limitations by arguing that the Arbitration Award was "republished" less than one year before she filed her Complaint.**

In a flawed attempt to avoid the District of Columbia's one-year statute of limitations, Plaintiff's Complaint indicates that she may attempt to argue the Arbitration Award was "republished." *See, e.g.*, ECF No. 1 at ¶¶ 5-6. Any attempt by Plaintiff to make such an argument in opposition to this motion to dismiss cannot succeed as a matter of law because the substance of the Arbitration Award, issued and first published in 2018, was never substantively altered or "republished" in a manner that could create a new, timely claim for defamation. Numerous courts have applied the single publication rule to allegedly defamatory statements published on the Internet to avoid potentially endless retriggering of the statute of limitations period. *See, e.g.*, *Lokhova v. Halper*, 995 F.3d 134, 142-44 (4th Cir. 2021); *Kiebala v. Boris*, 928 F.3d 680, 683-88 (7th Cir. 2019) (concluding that marking an Internet posting as "updated" to boost its online search results was not republication); *Clark v. Viacom Int'l, Inc.*, 617 Fed. Appx. 495, 505-06 (6th Cir.

19

2015) (collecting cases); *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173-75 (3d Cir. 2002); *Firth v. State*, 98 N.Y.2d 365, 369-72 (2002) (noting that "policy concerns militate against a holding that any modification to a Web site constitutes a republication of the defamatory communication itself").

Indeed, the weight of authority demonstrates that a defamatory statement published on the Internet is not "republished" for purposes of the statute of limitation unless material, substantive changes were made to the allegedly defamatory statement. To be sure, courts have determined that technical changes to websites do not result in republication. *Compare In re Philadelphia*, 690 F.3d at 173-75; *Firth*, 98 N.Y.2d at 369-72 (noting that "Web sites are in a constant state of change, with information posted sequentially on a frequent basis"); *Petro-Lubricant Testing Labs., Inc. v. Adelman*, 233 N.J. 236, 255 (N.J. 2018) ("Technical website changes and alterations unrelated to the substance of the allegedly defamatory content in the article do not constitute republication."); *and Churchill*, 378 N.J. Super. at 478-84 (treating technical changes to websites as republication "would be inappropriate and defeat the beneficial purposes of the single publication rule") *with In re Davis*, 347 B.R. 607, 610-12 (W.D. Ky. 2006) (concluding that adding "new material" that "contained substantive information" to website constituted republication sufficient to restart the statute of limitations).

Similar to technical website changes, creating new Internet links to a previously published defamatory statement does not result in republication of the statement for purposes of the statute of limitations. *See Lokhova*, 995 F.3d at 142-44; *In re Philadelphia,* 690 F.3d at 173-75; *Salyer v. Southern Poverty Law Center, Inc.*, 701 F. Supp. 2d 912, 915-18 (D. Ky. 2009). And altering the means of Internet access to a defamatory statement does not constitute a republication. *See, e.g.*, *Salyer*, 701 F. Supp. 2d at 917 (holding that addition of new hyperlinks to defamatory statement

267779892v.5

was not republication and instead was "simply a new means for accessing the referenced article");

*Churchill*, 378 N.J. Super. at 478-84 (concluding that technical changes to a website merely "altered the means by which website visitors could access" the defamatory statement, and thus were not republications sufficient to bypass the single publication rule).

The Third Circuit's decision in *In re Philadelphia Newspapers, LLC* is instructive. There, plaintiffs alleged that a newspaper initially published a defamatory statement on its website, and then subsequently published a separate editorial that linked to and endorsed the prior defamatory statements. 690 F.3d at 165. The Third Circuit concluded that these actions did not constitute "republication" to avoid the single publication rule's application. *Id.* at 173-75. As the court cogently explained:

> The single publication rule advances the statute of limitations' policy of ensuring that defamation suits are brought within a specific time after the initial publication. Websites are constantly linked and updated. If each link, or technical change were an act of republication, the statute of limitations would be retriggered endlessly and its effectiveness essentially eliminated.

*Id.* at 175. Though a new link or website modification may bring readers' attention to the existence of a defamatory statement, such actions do not constitute a republication of the article. *Id.* The court aptly summarized the critical distinction: "courts addressing the doctrine in the context of Internet publications generally distinguish between linking, adding unrelated content, or making technical changes to an already published website (which they hold is not republication), and adding substantive material related to the allegedly defamatory material to an already published website (which they hold is republication)." 690 F.3d at 174 (citing *In re Davis*, 347 B.R. at 611-12). The Third Circuit also highlighted the unreasonable outcome that would result if the single publication rule were not applied — "a publisher would remain subject to suit for statements made many years prior, and ultimately could be sued repeatedly for a single tortious act the prohibition

21

of which was the genesis of the single publication rule." 690 F.3d at 175 (citing *Graham v. Today's Spirit*, 468 A.2d 454, 458 (Pa. 1983) (Pennsylvania decision adopting the same single publication rule that is recognized in the District of Columbia)).

Plaintiff Seltzer alleges various conflicting dates when she claims FINRA made technical changes to its website in the years after the Arbitration Award was first published in 2018. For example, Plaintiff alleges that "Google Tags," "nodes," and other website search tools were utilized to connect her name to the Arbitration Award. ECF No. 1 at ¶ 39. But nearly all of the alleged technical changes occurred more than one year before Plaintiff filed her Complaint, and thus cannot support her claim for defamation. Plaintiff alleges that in "2020, FINRA published the false and defamatory award tagged to Plaintiff Seltzer's name in a Google Search for 365 days," and that the "Award was tagged to her name from July 13, 2020, to March 2021, daily." *Id.* at ¶ 36. Plaintiff further alleges that as early as February 24, 2020, FINRA used "AWS wrappers to continue to link" the Arbitration Award to Plaintiff's name. *See id.* at ¶ 39; *see also* 1:21-cv-02093-JMC, ECF No. 1-1, p. 8, ¶ 4.[14] Plaintiff concedes that "AWS knowledge graphs" were utilized beginning in "late 2020" to "tag" the Arbitration Award to Plaintiff's name. ECF No. 1 at ¶ 66. All of these alleged actions occurred more than one year before Plaintiff filed her Complaint on February 2, 2022, and thus cannot support a timely claim for defamation.

In addition to alleged events in 2018-2020, Plaintiff also alleges redundant technical changes to the FINRA website occurred on February 4, 2021. ECF No. 1 at ¶¶ 6, 68. But Plaintiff's allegations regarding "tagging" and "knowledge graphs" are inconsequential because those actions

---

[14] Specifically, in the matter of *Seltzer v. Gensler, et al.*, 1:21-cv-02093-JMC, Plaintiff's exhibit filed as ECF No. 1-1 alleges that FINRA used "AWS wrappers to continue to link to Petitioner Seltzer's name and the defamatory award from February 24, 2020 until February, 2021, when it was removed temporarily. However, FINRA then re-published the Award to Petitioner Seltzer's name repeatedly through various AWS wrappers."

22

did not change the substance of the allegedly defamatory Arbitration Award. Additionally, Plaintiff alleges that the same "tagging" and "knowledge graph" actions occurred as early as February 2020, and thus the alleged "knowledge graph" actions in February 2021, were no different than prior technical website changes that occurred outside of the one-year statute of limitations period. *See id.* at ¶¶ 36, 66. Regardless of the precise dates of the alleged linking, tagging, or knowledge graphs updates, Plaintiff's allegations equate to nothing more than technical website changes or linking to the previously published Arbitration Award. Moreover, Plaintiff makes no allegations that the substance of the Arbitration Award itself has been altered since it was first issued in 2018. As demonstrated by the substantial case authority detailed above, these types of actions alleged in the Complaint are insufficient to avoid application of the single publication rule. The purpose of the single publication rule would be eviscerated and would be rendered meaningless in the context of Internet publications if Plaintiff Seltzer's defamation claim were permitted to proceed under a republication theory as alleged in her Complaint. *See Jankovic*, 494 F.3d at 1087; *In re Philadelphia*, 690 F.3d at 175; *Lokhova*, 995 F.3d at 142-43. Consequently, the Court should reject any attempt by Plaintiff to argue that the Arbitration Award was "republished" in a manner to retrigger the statute of limitations, and Plaintiff's Complaint should be dismissed with prejudice as untimely.

**D.**   **Plaintiff's Complaint fails to demonstrate diversity jurisdiction sufficient to support this Court's subject-matter jurisdiction.**

As noted above, the party "seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action." *Loughlin*, 393 F.3d at 171 (D.C. Cir. 2004) (*citing Naartex*, 722 F.2d at 792)); *see also* Fed. R. Civ. P. 8(a) (requiring that a complaint must include a "short and plain statement of the grounds for the court's jurisdiction").

267779892v.5

A plaintiff's failure to plead facts to demonstrate diversity jurisdiction "warrants dismissal of the action." *Hewlett*, 2010 U.S. Dist. LEXIS at \*1; *see also* Fed. R. Civ. P. 12(b)(1).

Plaintiff Seltzer's Complaint generally alleges diversity jurisdiction, but fails to allege any facts regarding her state of citizenship and thus fails to demonstrate that diversity jurisdiction exists to support this Court's subject-matter jurisdiction.[15] Consequently, Plaintiff fails to satisfy her burden of demonstrating diversity jurisdiction, and Plaintiff's Complaint must be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### E.    Plaintiff's Complaint should also be dismissed because Plaintiff's vague and confusing allegations fail to satisfy the pleading requirements of the Federal Rules of Civil Procedure.

As noted above, although courts afford *pro se* plaintiffs with some latitude, *pro se* plaintiffs must still comply with the requirements of the Federal Rules of Civil Procedure. *Satterlee v. Commissioner*, 195 F. Supp. 3d 327, 334 (D.D.C. 2016); *see also Clariett v. Rice*, Civ. No. 04-2250 (RJL), 2005 U.S. Dist. LEXIS 42884, at \*14 (D.D.C. Oct. 18, 2005); *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Dismissal is appropriate when the complaint is unclear or fails to give the defendants fair notice of the claims against them. *See Satterlee*, 195 F. Supp. 3d at 334 ("Based on his failure to comply with Rule 8 alone, the Court could dismiss this case in its entirety.") (citing *Beranek v. Klassen*, No. 73-2247, 1975 U.S. App. LEXIS 16797 (D.C. Cir. Mar. 4, 1975)); *Grigsby v. Thomas*, 506 F. Supp. 2d 26, 28 (D.D.C. 2007) ("Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief.") (citations omitted).

---

[15] On February 2, 2022, Plaintiff filed a motion for "leave to file address and telephone number under seal," which the Court granted on February 16, 2022. *See* ECF 3; Minute Order dated Feb. 16, 2022. But this does not relieve Plaintiff of her burden to plead and demonstrate jurisdiction.

24

267779892v.5

In the present case, Plaintiff Seltzer's Complaint fails to meet the basic pleading requirements of the Federal Rules of Civil Procedure. Rather than provide a "short and plain statement" showing she is entitled to relief, Plaintiff's Complaint includes legal arguments, references to other pending and closed litigation matters, allegations regarding the actions of third parties unrelated to FINRA, and lengthy diatribes that have no direct connection to her purported claim for defamation against FINRA. Plaintiff's Complaint also includes illegible screenshots allegedly taken from various websites.

Plaintiff's Complaint begins by stating her action is for defamation and defamation per se, but the Complaint also appears to include allegations of other violations that are not separately listed as claims she is attempting to assert against FINRA. *See, e.g.,* ECF No. 1 at ¶ 37 (alleging violations of Section 230 of the Communications Act). Most of Plaintiff's allegations are not "simple, concise, and direct" as required by Rule 8(d). Plaintiff makes several vague and confusing references to dates upon which material events allegedly occurred, but fails to clearly plead the time, place, and content of the allegedly defamatory statements at issue. *See Tressler v. AMTRAK*, 819 F. Supp. 2d 1, 6 (D.D.C. 2011) (citing *Wiggins v. District Cablevision*, 853 F. Supp. 484, 494 (D.D.C. 1994)). Most importantly, due to the wide range of legal arguments and opaque allegations, it is difficult to discern which of Plaintiff's allegations are material factual allegations regarding FINRA. As a result, Plaintiff's Complaint should be dismissed for Plaintiff's failure to comply with the minimum requirements of the Federal Rules of Civil Procedure. And Plaintiff should not be granted leave to amend because any amendment would be futile in light of FINRA's arbitral immunity and the statute of limitations. *See Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012); *Seth v. District of Columbia*, Civ. No. 18-1034 (BAH), 2019 U.S. Dist. LEXIS 77808, at *33-35 (D.D.C. May 8, 2019).

25

## V.    CONCLUSION

For all of the reasons set forth above, Defendant Financial Industry Regulatory Authority, Inc. respectfully requests that this Honorable Court grant its Motion to Dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated: March 9, 2022                              Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

*/s/ Ryan M. Duffy*
Kathleen H. Warin (#492519)
Ryan M. Duffy (#1013868)
1500 K Street, NW, Suite 330
Washington, DC 20005
Phone: 202-626-7660
Fax: 202-628-3606
Kathleen.Warin@wilsonelser.com
Ryan.Duffy@wilsonelser.com

**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.**

*/s Angela Pegram Saffoe*
Angela Pegram Saffoe (#481802)
1735 K Street, N.W.
Washington, D.C.  20006
Telephone:  (202) 728-8334
Angela.Saffoe@finra.org

***Counsel for Defendant Financial Industry Regulatory Authority, Inc.***

26

267779892v.5